# EXHIBIT A

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:*   -   TORT   -   MOTOR VEHICLE TORT -
CONTRACT   -   EQUITABLE RELIEF   -   OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
CIVIL ACTION
No. 10-1575

RUSSELL M. MORRIS + JENNIFER L MORRIS , Plaintiff(s)

v.

BAC HOME LOANS SERVICING, LP AND

KORDE & ASSOCIATES, P.C. ............................ , Defendant(s)

## SUMMONS

To the above named Defendant: BAC HOME LOANS SERVICING, LP

You are hereby summoned and required to serve upon JOSEF CULIK

plaintiff's attorney, whose address is 100 CUMMINGS CTR, STE 425 G, BEVERLY, MA 01915 , an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

145 HIGH ST, NEWBURYPORT, MA 01950

either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS. BARBARA J. ROUSE   , Esquire, at Salem, the
day of                                    , in the year of our Lord two thousand

ATTEST: A TRUE COPY
8-26-10
*Paul Manly*
CONSTABLE
& DISINTERESTED PARTY

*Thomas H. Driscoll Jr.*
Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your
attorney must serve a copy of your written answer within 20 days as specified herein *and* also file the original in the Clerk's Office

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on_____, 20    , I served a copy of
the within summons, together with a copy of the complaint in this action, upon the within-named
defendant, in the following manner (see Mass. R. Civ. P. (d) (1-5):

_____

_____

_____

Dated:                    , 20     .

N.B.    TO PROCESS SERVER:-
        PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
        THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

                                              , 20     .

COMMONWEALTH OF
MASSACHUSETTS

ESSEX. SS.

SUPERIOR COURT
CIVIL ACTION
No.

Plaintiff(s)

v.

Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 10-1575 B | Trial Court of Massachusetts Superior Court Department County: Essex |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Russell M. Morris and Jennifer L. Morris | BAC Home Loans Servicing, LP d/b/a Bank of America Home Loans, and Korde & Associates, P.C. |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Josef Culik, Culik Law P.C. 100 Cummings Center, Suite 425G, Beverly, MA 01915 978-910-0248 Board of Bar overseers number: 672665 | ATTORNEY (if known) |

### Origin code and track designation

Place an x in one box only:

[X] 1. F01 Original Complaint

[ ] 2. F02 Removal to Sup. Ct. C.231, s. 104 (Before trial) (F)

[ ] 3. F03 Retransfer to Sup. Ct. C. 231, s. 102C(X)

[ ] 4. F04 District Court Appeal C.231, s. 97 & 104 (After trial) (x)

[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60)(x)

[ ] 6. E10 Summary process Appeal (x)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (Specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B99 | Other (G.L. c. 93A) | ( F ) | ( X )Yes  (   ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
  2. Total doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
  3. Total chiropractic expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
  4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
  5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
                                                               Subtotal $. . . . . . . . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
C. Documented property damages to date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . . . . . . . .
F. Other documented items of damages (describe)
  Damage to credit, loss of loan modification, statutory damages        $. . . . . . . . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
  Violation of G.L. c. 93A by wrongful institution of foreclosure
  proceedings and failure to evaluate for loan modification. Violation of      $. . . . . . . . . . . . . . . . . .
  Fair Debt Collection Practices Act.                          TOTAL $. 50,000. . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):


                                                               TOTAL $. . . . . . . . . . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____     Date:  July 23, 2010

MASSACHUSETTS TRIAL COURT
ESSEX COUNTY SUPERIOR COURT

RUSSELL M. MORRIS and
JENNIFER L. MORRIS,
    Plaintiffs

v.

Case No.   10cv1575-B

BAC HOME LOANS SERVICING, L.P.,
d/b/a BANK OF AMERICA HOME
LOANS, and
KORDE & ASSOCIATES, P.C.,
    Defendants

## COMPLAINT

### Introduction

1.    Plaintiffs have been wrongfully denied a loan modification by their mortgage company, BAC Home Loans Servicing, LP. Because of the mortgage servicing guidelines applicable to their mortgage, the Plaintiffs are entitled to a loan modification under the federal Home Affordable Modification Program. But, BAC Home Loans has ignored the Plaintiffs' application for a loan modification over a period of months and has instead pushed the Plaintiffs further into an unnecessary foreclosure. BAC Home Loans' actions are violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A. BAC Home Loans has ignored the Plaintiffs' demand letter, and left them with no option but to bring this suit.

2.    Korde & Associates, P.C., is the debt collector and foreclosure law firm hired by BAC Home Loans to foreclose on the Plaintiffs. It has repeatedly violated the Fair Debt Collection Practices Act by contacting them directly despite knowing them to be represented by counsel, and by misrepresenting the amount of the debt owed.

1

## Parties

3.   Russell M. Morris and Jennifer L. Morris ("the Morrises"), husband and wife, are natural persons residing at 570 Essex Ave., Unit 2, Gloucester, Essex County, MA 01930.

4.   BAC Home Loans Servicing, LP ("BOA"), doing business as Bank of America Home Loans, is a Texas limited partnership with principal offices located at 6400 Legacy Dr., Plano, TX 75024. BOA regularly does business in Massachusetts. BOA is in the business of servicing and originating mortgage loans.

5.   Korde & Associates, P.C. ("Korde") is a Massachusetts professional corporation and debt collector engaged in the practice of law with principal offices located at 321 Billerica Rd., Suite 210, Chelmsford, Middlesex County, MA 01824.

## General Allegations

6.   On January 10, 2007, the Morrises refinanced their home with a loan in the amont of $288,000 from Bank of America, N.A., secured by a mortgage in favor of Bank of America, N.A.

7.   Defendant BOA, formerly known as Countrywide Home Loans Servicing, L.P., is a subsidiary of the nationally chartered bank Bank of America, N.A.

8.   Defendant Korde is a foreclosure law firm conducting foreclosures on homeowners throughout Massachusetts on behalf of BOA. It is conducting the foreclosure of the Morrises' home.

9.   The Federal National Mortgage Association (better known as "Fannie Mae") is the owner of the Morrises' mortgage. (**Exhibit A.**)

10.   Fannie Mae is a government-sponsored enterprise chartered by the United States Congress to provide liquidity, stability, and affordability to the U.S. residential housing market.

11.   Fannie Mae does not make loans directly to homebuyers. After borrowers complete the closing process on their mortgage loans, Fannie Mae buys those mortgages from their approved lenders. The process of replenishing the supply of funds enables the lenders to make more mortgage loans to other borrowers.

2

12.   Because Fannie Mae has a public purpose, and because it commands a large share of the residential mortgage market, it is able to regulate and restrict the ways that the mortgages it owns are serviced. Its servicing regulations are intended to insure that homeowners are treated fairly, and that homeowners are not foreclosed on unnecessarily.

13.   Fannie Mae does not directly receive payments from the borrowers whose mortgages it owns. Rather, it contracts with mortgage companies, known in industry terms as "servicers," such as BOA, to act as the intermediary between itself and borrowers.

14.   These servicers collect payments, send billing statements, and generally act in the place of Fannie Mae in almost all respects to the borrower.

15.   In fact, most homeowners whose mortgage loans are owned by Fannie Mae are unaware that Fannie Mae is the owners of their mortgages.[1]

16.   Fannie Mae maintains control over the manner in which its mortgages are serviced. In order to service Fannie Mae mortgages, servicers must agree to follow servicing instructions Fannie Mae promulgates, which come from the servicing contract itself, servicing guides, announcements, letters, and notices.[2]

17.   BOA, as the servicer of the Morrises' mortgage, acts on behalf of Fannie Mae in all respects by collecting mortgage payments, sending monthly billings statements, modifying loans if required, and conducting foreclosures when necessary.

18.   BOA, because of its servicing contract with Fannie Mae, is obligated to follow Fannie Mae's servicing instructions.

19.   The Morrises' mortgage is subject to all Fannie Mae guidelines.

20.   BOA is obligated to comply with these Fannie Mae guidelines with respect to the Morrises' mortgage.

---

[1] The identity of the owner of a mortgage is typically disguised because the mortgage servicer is not the entity that owns the mortgage, but rather acts on behalf of the creditor. *See Consumer SolutionsREO, LLC v. Hillery*, No. 111, 2010 WL 1222739 (N.D. Cal. Mar. 24, 2010).
[2] These are available online to the public at
https://www.efanniemae.com/sf/guides/ssg/#ssg.

3

21.   Here, as described in more detail below, rather than follow the Fannie Mae
      servicing guidelines as it is required to do and evaluate the Morrises for a loan
      modification under the federal Home Affordable Modification Program, BOA lost
      and ignored the Morrises requests for evaluation for a loan modification.

### Count I:
### Consumer Protection Act, G.L. c. 93A
### Failure to Comply with Fannie Mae's HAMP Guidelines
### (BOA)

22.   The preceding allegations are repeated and realleged.

23.   BOA is engaged in trade or commerce in Massachusetts, servicing and originating
      mortgages for residents of Massachusetts.

24.   The Morrises are not persons entitled to bring an action under M.G.L. c. 93A, § 11.

25.   BOA is the servicer of the Morrises' mortgage.

26.   BOA and is obligated to follow Fannie Mae guidelines with respect to the Morrises.

27.   BOA engaged in unfair or deceptive acts or practices with respect to the Morrises,
      in violation of the Consumer Protection Act, by violating Fannie Mae and HAMP
      guidelines as described in more detail below.

28.   To avert the ongoing national foreclosure crisis, and to preserve the American
      tradition of homeownership, the U.S. Department of the Treasury established the
      federal Home Affordable Modification Program ("HAMP") in March 2009.

29.   The statutory authority for the creation of the HAMP program is the Emergency
      Economic Stabilization Act of 2008, §§ 101 and 109, as amended by the American
      Recovery and Reinvestment Act of 2009, § 7002.

30.   HAMP's purpose is to modify the mortgages on principal residences of eligible
      homeowners[3] by reducing their monthly mortgage payments.

---

[3] Eligible homeowners must owe less than $729,000 on their first mortgage, must
occupy the house as their principal residence, and their mortgage must have been
originated prior to January 1, 2009.

4

31.    HAMP reduces interest rates of homeowners' mortgages, allows capitalization of
       past-due amounts, extends the repayment period of the mortgages, and allows
       deferred payments of principal.

32.    Fannie Mae has instructed BOA, as well as its other servicers, to evaluate
       homeowners for loan modifications under HAMP.

33.    Those guidelines, which are promulgated by Fannie Mae, provide a comprehensive
       step-by-step process under which mortgage servicers must evaluate homeowners
       for loan modifications that reduce homeowners' mortgage interest rates, extend the
       repayment period of the loans, and/or defer principal.

34.    Those guidelines require that servicers, including BOA, reduce the mortgage
       payment of principal, interest, taxes, and insurance ("PITI") on a borrower's first-
       lien mortgage to 31% of the borrower's monthly pre-tax income.

35.    To evaluate borrowers for a loan modification under HAMP, servicers, including
       BOA, are required to apply the "waterfall," a series of steps to reduce the monthly
       mortgage payment and modify the loan.

36.    First, the waterfall reduces the interest rate to as low as 2% to try to reduce the PITI
       payment to 31% of the borrower's monthly pre-tax income.

37.    If this interest rate reduction is not enough to reduce the PITI payment to 31%, the
       servicer must take the next step of the waterfall.

38.    Next, the servicer must extend the repayment term of the mortgage to a maximum
       of 40 years to further reduce the monthly mortgage payment.

39.    If this repayment term extension is not enough to reduce the PITI payment to 31%,
       the servicer must take the final step of the waterfall.

40.    Finally, the servicer must allow a forbearance of up to 30% of the principal balance
       of the mortgage to try to reach the 31% of monthly pre-tax income target.

41.    The above-described waterfall guidelines are specifically laid out in Fannie Mae
       Announcement 09-05R, which is attached in part and incorporated by reference
       into this Complaint. (**Exhibit B.**)

5

42. Servicers, including BOA, are obligated under their servicing contracts to follow Fannie Mae announcements.

43. A servicer is required to begin this loan-modification evaluation upon receipt of the HAMP Request for Modification and Affidavit form ("RMA"), a three-page financial questionnaire and affidavit. Along with the RMA, the borrower is required to provide verification of the financial information, including pay stubs, bank statements, tax returns, and tax-transcript-request form. Collectively, the HAMP RMA and financial verification are the "Financial Package."

44. Fannie Mae Announcement 09-31 states that within 30 calendar days of receiving a borrower's Financial Package, servicers, including BOA, must complete an evaluation of the borrower for a loan modification under HAMP. Announcement 09-29 is attached in part and incorporated by reference into this complaint. (**Exhibit C.**)

45. BOA was obligated to evaluate the Morrises under HAMP using the above-described steps under the waterfall.

46. The Morrises, by counsel, sent a complete Financial Package to a BOA representative named Kanise Butters, in the Home Retention Customer Relations Department, via email on January 26, 2010 and February 4, 2010.

47. BOA failed to evaluate the Morrises under HAMP as it is required to do.

48. Instead, BOA ignored the Morrises' request for evaluation under HAMP.

49. On April 13, 2010, over one month late, BOA sent a non-HAMP modification agreement to the Morrises that did not comply with the HAMP guidelines.

50. On April 13, 2010, the Morrises, by counsel, sent a demand letter pursuant to G.L. c. 93A, § 9, requesting an offer of settlement and describing BOA's unfair violations of the Fannie Mae HAMP guidelines. (**Exhibit D.**)

51. Rather than respond to the Morrises' demand letter, BOA ignored it and has failed to respond to it.

52. BOA's failure to respond to the Morrises' demand letter was willful and knowing.

53.   As a direct and proximate result of BOA's conduct described above, the Morrises suffered damages including damage to their credit, loss of time, accumulation of interest, and unnecessary initiation of foreclosure action by BOA.

**Count II:**
**15 U.S.C. § 1692k, Fair Debt Collection Practices Act**
**Debt Collector's Communication With Debtor Known to be Represented by Counsel**
(Korde)

54.   The preceding allegations are repeated and realleged.

55.   Korde regularly attempts to collect debts from consumers that are owed or alleged to be owed to third parties by, among other things, conducting the legal aspects of foreclosures on behalf of mortgagees.

56.   Korde is engaged in the collection of debts from consumers using the mail and telephone.

57.   Korde is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

58.   Korde violated the FDCPA as follows.

59.   The FDCPA, 15 U.S.C. § 1692c, prohibits a debt collector from directly contacting a debtor who is known to be represented by an attorney:

> [A] debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt . . . .

60.   Under the FDCPA, 15 U.S.C. § 1692g(b), if a debtor requested verification of a debt, a debt collector is prohibited from engaging in collection activity until such verification is provided:

> If the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . is mailed to the consumer by the debt collector.

7

61.    On August 27, 2009, the attorney for the Morrises informed Korde that he
represented the Morrises with respect to their mortgage, and requested that Korde
provide verification of the debt, stating:

> My office represents Russell and Jennifer Morris regarding
> the above-referenced account(s). A power of attorney
> evidencing the representation is enclosed. I demand that you
> cease and desist all communications in connection with the
> collection of this alleged debt, and that you instead direct all
> such communications to my office . . . .
> . . . .
> Pursuant to the Fair Debt Collection Practices Act, I also
> demand that you provide validation of the above account(s).

**(Exhibit E.)**

62.    This request was sent to Korde via first-class mail and facsimile 978-256-7615.

63.    In violation of the above sections of the FDCPA, 15 U.S.C. §§ 1692c and 1692g(b),
Korde bypassed the Morrises' attorney and continued to send collection-related
correspondence directly to the Morrises, and failed to cease its collections efforts
despite the Morrises' request by counsel for verification of the debt, including a
deficiency notice on January 13, 2010 and a copy of the order of notice from the
Land Court on February 18, 2010.

64.    The FDCPA, 15 U.S.C. § 1692e, also prohibits debt collectors from
misrepresenting the amount of a debt to a debtor, stating:

> [T]he following conduct is a violation of [the FDCPA]:
> . . . .
> (2) The false representation of . . . the character, **amount**, or
> legal status of any debt;

(Emphasis added.)

65.    On January 13, 2010, Korde sent the Morrises a deficiency notice in an attempt to
collect at debt from them that misrepresented the amount of the Morrises' debt. The
deficiency notice stated that the original principal balance of the mortgage was
$360,000. **(Exhibit F.)**

66.    In fact, the mortgage signed by the Morrises on record in the Essex County Registry
of Deeds is only for $288,000. (Attached in part as **Exhibit G.**)

8

67.   Korde, therefore, misrepresented the amount of the Morrises' debt by attempting to collect $72,000 more than they had ever owed on the principal of their mortgage.

68.   Under the FDCPA, 15 U.S.C. § 1692e(11), a debt collector is required to disclose in all communications to a debtor that the debt collector is "attempting to collect a debt."

69.   In Korde's February 18, 2010 letter to the Morrises **(Exhibit H)**, it failed to notify them that the communication was an attempt to collect a debt, thereby violating the FDCPA.

70.   As a result of Korde's acts described above, the Morrises suffered damages for which Korde is responsible, including but not limited to actual damages, mental anguish, legal fees, and court costs.

### Prayer for Relief

WHEREFORE, Plaintiffs pray that the Court order the following relief:

A.   A declaratory judgment that BOA violated G.L. c. 93A by failing to evaluate the Morrises for a loan modification under the Home Affordable Modification Program;

B.   An award of actual damages, costs, and attorney's fees for BOA's violation of G.L. c. 93A;

C.   An order that BOA immediately evaluate the Morrises for HAMP;

D.   A declaratory judgment that Korde violated the FDCPA with respect to the Morrises;

E.   An award of actual damages, statutory damages, costs, and attorney's fees for Korde's violations of the FDCPA.

9

## Jury Demand

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiffs,
Russell M. Morris and
Jennifer L. Morris,

By:

Josef Culik (BBO #672665)
Culik Law P.C.
100 Cummings Center
Suite 425G
Beverly, MA 01915
Tel: 978-910-0248
Fax: 978-910-0247
josef@culiklaw.com

Dated: July 23, 2010

10

Does Fannie Mae Own Your Mortgage? Loan Lookup Tool

http://www.fanniemae.com/loanlookup/



The Fannie Mae Loan Lookup enables mortgage borrowers to quickly determine if Fannie Mae owns their loan by providing a street address, unit, city, state, and zip code.

| Street Address * | | Unit |
|---|---|---|
| 570 ESSEX | | 2 |
| City | State | Zip Code * |
| GLOUCESTER | MA | 01930 |

※ * I confirm that I am the owner of this property, or have the consent of the owner to look up this information.

* Required Fields





Type the two words:



**Match Found.**

Based on the property information entered, it appears Fannie Mae owns a loan at this address.

A "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification.

If you're interested in a refinance, please contact your mortgage lender or servicer (the organization to whom you make your monthly mortgage payments) to confirm these results and ask about the Home Affordable Refinance Plus program.

You can find more information at MakingHomeAffordable.gov.

View Frequently Asked Questions for this Loan Lookup tool.

Thank you for contacting Fannie Mae.

- © 2010 Fannie Mae

- FAQ |
- Site Map |
- Privacy |
- Legal

The Fannie Mae Loan Lookup is provided us a convenience for borrowers. Fannie Mae makes no representation, warranty, or guarantee regarding the accuracy or completeness of the results. A search that results in a "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification. Information that does not match our records exactly may return inaccurate results. You should contact your mortgage lender to verify these results.

For information about the use of our site and our privacy policy, see Legal Information. Click here for FAQs.



888-995-HOPE™
Homeowner's HOPE™ Hotline
888-995-HOPE (4673)
877-304-9709 TTY

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673) or via a TTY at 877-304-9709. The Hotline can help with questions about the program and offers free HUD-certified counseling services in English, Spanish, and other languages.



  SERVICING GUIDE

*Announcement 09-05R*

**EXHIBIT B**

*April 21, 2009*
*(\*Reposted May 15, 2009)*

*Amends these Guides: Servicing*

## Reissuance of the Introduction of the Home Affordable Modification Program, HomeSaver Forbearance™, and New Workout Hierarchy

### Introduction

**This Announcement (09-05R) is a reissuance of Announcement 09-05, which was originally issued on March 4, 2009.  This Announcement provides additional policy clarification and instruction and supersedes Announcement 09-05 in its entirety.  Policy clarifications and new instructions that are incorporated into this Announcement are identified by bold type. (Other minor editorial changes are included in this document but not identified in bold.)**
*\*Reposted with "HAMP" in lieu of "HMP".*

### Background

On February 18, 2009, President Obama announced the Homeowner Affordability and Stability Plan to help up to 7 to 9 million families restructure or refinance their mortgage loans to avoid foreclosure.  As part of this plan, the Treasury Department (Treasury) announced a national modification program aimed at helping 3 to 4 million at-risk homeowners – both those who are in default and those who are at imminent risk of default – by reducing monthly payments to sustainable levels. Treasury issued uniform guidance for loan modifications across the mortgage industry in Supplemental Directive 09-01 on April 6, 2009.  This Announcement provides guidance to Fannie Mae servicers for adoption and implementation of the Home Affordable Modification Program (HAMP) for Fannie Mae loans.

Under the HAMP, servicers will use a uniform loan modification process to provide eligible borrowers with sustainable monthly payments.  The HAMP implementation guidelines set forth in this Announcement apply to all eligible one- to four-unit owner-occupied properties securing Fannie Mae portfolio mortgage loans and MBS pool mortgage loans guaranteed by Fannie Mae. The HAMP will replace the Streamlined Modification Program introduced in Announcement 08-33 and the Early Workout™ program announced in Announcement 08-31. The HAMP will expire on December 31, 2012.

All Fannie Mae-approved servicers must participate in the program for all eligible Fannie Mae portfolio mortgage loans and MBS pool mortgage loans guaranteed by Fannie Mae.

- Acceptable documentation includes letters, exhibits, a disability policy or benefits statement from the provider that states the amount, frequency and duration of the benefit. The servicer must determine that the income will continue for at least three years, and
- The servicer must obtain copies of signed federal income tax returns, IRS W-2 forms, or copies of the two most recent bank statements.

**If the borrower receives public assistance or collects unemployment:**
- **Acceptable documentation includes letters, exhibits or a benefits statement from the provider that states the amount, frequency, and duration of the benefit. The servicer must determine that the income will continue for at least nine months.**

If the borrower has rental income, acceptable documentation includes:
- Copies of all pages from the borrower's most recent two years of signed federal income tax returns and Scheduled E – Supplemental Income and Loss. The monthly net rental income to be calculated for HAMP purposes must equal 75 percent of the gross rent, with the remaining 25 percent being considered vacancy loss and maintenance expense.

**Verifying Occupancy**

A servicer must confirm that the property securing the mortgage loan is the borrower's primary residence as evidenced by the most recent signed federal income tax return (**or transcript of tax return obtained from the IRS**), a credit report, and one other form of documentation that would supply reasonable evidence that the property is the borrower's primary residence (such as utility bills in the borrower's name).

A servicer is not required to modify a mortgage loan if there is reasonable evidence indicating the borrower submitted false or misleading information or otherwise engaged in fraud in connection with the modification.

**Standard Modification Waterfall**

Servicers must apply the proposed modification steps enumerated below in the stated order of succession until the borrower's monthly mortgage payment ratio is reduced as close as possible to 31 percent, without going below 31 percent (the "target monthly mortgage payment ratio").

**Servicers must request prior written approval from Fannie Mae to deviate from the modification steps enumerated below or to reduce the borrower's monthly mortgage payment ratio below 31 percent. Prior written approval may be requested by submitting a non-delegated case into the HomeSaver Solutions® Network (HSSN). If approval is granted, borrower and servicer incentive payments for these modifications will be paid based on modification terms that reflect the target monthly mortgage payment ratio of 31 percent.**

**In the event that a modification step (e.g., principal forbearance) is prohibited under applicable state law, a servicer may skip the modification step without obtaining Fannie Mae's prior written approval.**

Note: If a borrower has an ARM loan or interest-only mortgage loan, the existing interest rate will convert to a fixed interest rate, fully amortizing mortgage loan.

**Step 1:** Capitalize accrued interest, out-of-pocket escrow advances to third parties and any required escrow advances that will be paid to third parties by the servicer during the trial period and servicing advances paid to third parties in the ordinary course of business and not retained by the servicer, if allowed by state law. Late fees may not be capitalized and must be waived if the borrower satisfies all conditions of the Trial Period Plan. **If applicable state law prohibits capitalization of past due interest or any other amount, the servicer must collect such funds from the borrower over a 60-month repayment period unless the borrower decides to pay the amount upfront.**

**Step 2: Reduce the interest rate. If the loan is a fixed rate mortgage loan or an ARM loan, then the starting interest rate is the current interest rate (the note rate).**

**Reduce the starting interest rate in increments of .125 percent to get as close as possible to the target monthly mortgage payment ratio. The interest rate floor in all cases is 2.0 percent.**

- **If the resulting rate is below the Interest Rate Cap, this reduced rate will be in effect for the first five years followed by annual increases of one percent per year (or such lesser amount as may be needed) until the interest rate reaches the Interest Rate Cap, at which time it will be fixed for the remaining loan term.**
- **If the resulting rate exceeds the Interest Rate Cap, then that rate is the permanent rate.**

**The "Interest Rate Cap" is the Freddie Mac Weekly Primary Mortgage Market Survey (PMMS) Rate for 30-year fixed rate conforming mortgage loans, rounded to the nearest 0.125 percent, as of the date that the Agreement is prepared.**

**Step 3:** If necessary, extend the term and reamortize the mortgage loan by up to 480 months from the modification effective date (i.e., the first day of the month following the end of the trial period) to achieve the target monthly mortgage payment ratio. Negative amortization after the effective date of the modification is prohibited.

**Step 4:** If necessary, the servicer must provide for principal forbearance to achieve the target monthly mortgage payment ratio. The principal forbearance amount is non-interest bearing and non-amortizing. The amount of principal forbearance will result in a balloon payment fully due and payable upon the earliest of the borrower's transfer of the property, payoff of the interest bearing unpaid principal balance (UPB) or maturity of the mortgage loan. The modified interest-bearing balance (i.e., the unpaid principal balance excluding the deferred principal balloon amount) must create a current mark-to-market LTV (current LTV based upon the new valuation) greater than or equal to 100 percent if the result of the NPV test is negative. A principal write-down or principal forgiveness is prohibited on Fannie Mae mortgage loans.



*Announcement 09-31*                                      *November 2, 2009*

## Amends these Guides: Servicing

## *Updates and Clarifications to the Home Affordable Modification Program*

### Introduction

Announcement 09-05R, *Reissuance of the Introduction of the Home Affordable Modification Program, HomeSaver Forbearance™, and New Workout Hierarchy*, provided guidance to Fannie Mae-approved servicers on the adoption and implementation of Home Affordable Modification Program (HAMP). Fannie Mae has an ongoing commitment to the success of this modification initiative, and is adopting changes to streamline the program documentation requirements and standardize the evaluation process.

This Announcement contains updates and clarifications to the following topics:

- Updates to Standard HAMP Documents
- Changes to Eligibility Determination Based on Net Present Value Evaluation
- Principal Forbearance Thresholds
- Verifying Borrower Income and Occupancy Status
- Modification Process
- Reporting
- Clarification of Reimbursement of Administrative Costs

**EXHIBIT C**

### Effective Date

Unless otherwise indicated, all policy changes included in this Announcement are effective immediately.

### **Updates to Standard HAMP Documents**

Fannie Mae servicers are encouraged to use the following new standard HAMP documents as soon as they become available but must use the documents no later than March 1, 2010. The documents will be posted on eFannieMae.com in the coming days.

---

Within **30 calendar days** following the servicer's receipt of a completed RMA, IRS Form 4506-T or 4506T-EZ, and all required income and other financial information (including all required documentation and either the borrower's tax transcript or tax return when using the verified income approach), the servicer must complete its evaluation of borrower eligibility and notify the borrower of its determination. If the servicer determines that the borrower is approved for a trial period plan, the servicer must either:

- send a TPP Notice for Verified Income (Form 196) to the borrower, or
- if the borrower is currently in a trial period plan pursuant to a stated income TPP Notice, send a written notice that the borrower has been approved for a HAMP modification pending timely receipt of all trial period payments.

If the servicer determines that a borrower cannot be approved for a trial period plan, the servicer must communicate that determination to the borrower in writing and consider the borrower for another foreclosure prevention alternative.

Servicers must retain a copy of the TPP Notice in the mortgage loan file and note the date that it was sent to the borrower. Receipt of the first trial period payment under the TPP Notice by the Trial Period Offer Deadline will be deemed as evidence of the borrower's acceptance of the trial period plan and its terms and conditions.

HAMP program guidelines require that, unless a borrower or co-borrower are deceased or borrower and co-borrower are divorced, all parties who sign the original mortgage loan documents (or their duly authorized representative) must sign the HAMP documents. In cases where a borrower and co-borrower are unmarried and either borrower or co-borrower relinquish all rights to the property securing the mortgage loan through a recorded quitclaim deed, the non-occupying borrower that has relinquished property rights is not required to provide income documentation or to sign the HAMP documents but remains liable for the outstanding mortgage debt.

In Announcement 09-05R, Fannie Mae indicated that unless a borrower or co-borrower is deceased or divorced, all parties who signed the original note **AND** security instrument (or their duly authorized representative(s)) must execute the HAMP documents. This Announcement is clarifying that all parties who sign either the original note **OR** the security instrument (or their duly authorized representative(s)) must execute the HAMP documents.

## Retaining First Lien Position

Announcement 09-05R outlines servicing requirements intended to ensure that a mortgage loan modified under HAMP retains first lien position. Fannie Mae is clarifying and supplementing requirements with respect to the steps that must be taken to ensure that the modified mortgage loan retains its first lien position and is fully enforceable.

First, Fannie Mae is eliminating the requirement for servicers to obtain subordination agreements. Second, when the final interest rate on the modified mortgage loan is greater than the pre-modified interest rate in effect on the mortgage loan, Fannie Mae now requires that the

# CULIK LAW PC

CULIKLAW.COM

100 CUMMINGS CENTER
SUITE 425G
BEVERLY, MA 01915

P 978 910 0248
F 978 910 0247

April 13, 2010

VIA CERTIFIED MAIL NO. 7009 1410 0000 8442 5850

BAC HOME LOANS SERVICING, LIMITED PARTNERSHIP
6400 LEGACY DRIVE
Plano, TX 75024



**Re:  Demand Pursuant to the Massachusetts Consumer Protection Act**
**Response Required Within 30 Days**

Dear Sir or Madam:

I represent Russell and Jennifer Morris of 570 Essex Ave. #2, Gloucester, MA 01930. My client's mortgage has account number 872194718 and is serviced by your organization. This is a demand for an offer of settlement pursuant to the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A ("the Consumer Protection Act"). You are required to respond to this demand within 30 days with an offer of settlement or else you may be subject to double or triple damages.

Your organization failed to evaluate my client in a timely manner pursuant to the guidelines of the Making Home Affordable Modification Program. This is a violation of the Consumer Protection Act. An overview of the law of the Consumer Protection Act is provided below, followed by a description of the specific regulation that your organization has violated, then concluding with the facts supporting my client's claim and a demand for an offer of settlement.

The Consumer Protection Act declares as unlawful under Massachusetts law all unfair or deceptive acts or practices. Both state and federal courts have recognized that an analysis of Consumer Protection Act claims is not dependent on common law principles of tort or contract law. The Consumer Protection Act created "broad new rights, forbidding conduct not previously unlawful under the common law of contract and tort or under any prior statute." *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 78 (1977); *accord Kattar v. Demoulas*, 433 Mass. 1, 12 (2000).

A determination of what is unfair or deceptive is neither dependent on traditional tort or contract law concepts, *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 27 (1997); nor limited by preexisting rights or remedies, *Travis v. McDonald*, 397 Mass. 230

(1986). Otherwise lawful acts can even be violations of the Consumer Protection Act. *Schubach v. Household Fin. Corp.*, 375 Mass. 133 (1978).

Acts or practices that fail to comply with existing statutes, rules, regulations, or law meant for the protection of the public's health, safety, and welfare are prohibited by 940 C.M.R. 3.16, a violation of which is a *per se* violation of the Consumer Protection Act. And mortgage servicers are specifically prohibited from engaging in "unfair or unconscionable" means in servicing any loan under 209 C.M.R. 18.21, a violation of which is also a *per se* violation of the Consumer Protection Act.

Here, your organization has agreed to participate in the Making Home Affordable Modification Program ("HAMP"). The HAMP program was created pursuant to the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343 (2008) and the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009). The purpose of HAMP is to protect consumer homeowners from foreclosure by providing loan modifications to eligible homeowners. Emergency Economic Stabilization Act of 2008 at § 109 ("[t]he Secretary shall implement a plan that seeks to maximize assistance for homeowners ... to minimize foreclosures").

The HAMP guidelines, as a matter of law, are the industry standard for the residential mortgage servicing industry. Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 (2009), § 129 ("the qualified loss mitigation plan guidelines issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute standard industry practice for purposes of all Federal and State Laws").

As part of HAMP, your organization has agreed to follow what are called "supplemental directives" issued by Treasury, which regulate the substance and procedure for that program. Supplemental Directive 09-07 ("SD 09-07") outlines the streamlined modification program, intended to speed up HAMP loan modifications in the face of massive mortgage-servicer noncompliance and slow response times.

Under SD 09-07, your organization has a specific timeline that it must follow when responding to borrowers' loan-modification inquiries. SD 09-07 requires that when a borrower completes and submits a request for a modification to a mortgage servicer, the servicer is required to do the following: within 10 business days of receipt of the request, acknowledge receiving it, in writing; and, within 30 calendar days of receipt, send a written notice of approval and a Trial Period Plan (TPP) so that the borrower can begin the trial loan modification payments.

Here, your organization by failing to acknowledge my client's loan modification package, and, further, by failing to provide a TPP, your organization has violated SD 09-07. My client, by counsel sent an entire package of documents for consideration for a

2

loan modification on February 4, 2010. This package included all the documentation required for evaluation for HAMP modification, including income verification.

Despite sending a complete package of documents to your organization, it failed to comply with its obligations under SD 09-07. A written acknowledgement was required within 10 business days; however, no written acknowledgement has been received. And a TPP was required within 30 calendar days; however, no TPP has been received, either.

Therefore, because your organization did not comply with SD 09-07, it is in violation of the Consumer Protection Act. Specific guidelines intended to protect consumer-homeowners are provided for in the HAMP program guidelines, as well as the Helping Families Save Their Homes Act of 2009, the Emergency Economic Stabilization Act of 2008, and the American Recovery and Reinvestment Act of 2009. A violation of any or all of those guidelines constitutes an unfair or deceptive trade practice.

My client has been damaged in that he has been deprived of the entitlement to be evaluated timely for HAMP. I demand that you immediately evaluate my client for a loan modification, or else a civil lawsuit will be filed against your organization for injunctive and monetary relief.

Please contact me directly with any questions, or if you wish to discuss this case.

Very truly yours,

Josef Culik
Attorney at Law

3

**CULIK LAW** PC

CULIKLAW.COM
P.O. BOX 805
ROCKPORT, MA 01966
P (978) 841-9570
F (978) 233-0561

August 27, 2009

VIA FIRST-CLASS MAIL AND FACSIMILE 978-256-7615

Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824



**Re:   Cease and desist letter; Validation of debt**
**Loan # 6700031948**
**570 Essex Ave., Gloucester, MA 01930**

Dear Sir or Madam:

My office represents Russell and Jennifer Morris regarding the above-referenced account(s). A power of attorney evidencing the representation is enclosed.

I demand that you cease and desist all communications in connection with the collection of this alleged debt, and that you instead direct all such communications to my office at:

Culik Law P.C., P.O. Box 805, Rockport, MA 01966
Phone: (978) 841-9570 / Fax: (978) 233-0561

Pursuant to the Fair Debt Collection Practices Act, I also demand that you provide validation of the above account(s). And pursuant to the Title 209 of the Code of Massachusetts Regulations, Section 18.18, and/or Title 940 of the Code of Massachusetts Regulations, Section 7.08, I specifically demand that you provide to me the following **within five business days:**

   (a)   All papers or copies of papers, in your possession which bear my client's signature and which concern the debt being collected; and

   (b)   Any ledger, account card, or similar record in your possession which reflects the date and amount of payments, credits, and charges concerning my client's purported debt.

Be advised that failure to produce the requested documentation is an unfair or deceptive business practice in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Very truly yours,

Josef Culik, Esq.

Enclosure

2

# KORDE & ASSOCIATES, P.C.

Counsellors at Law
321 Billerica Road, Suite 210
Chelmsford, Massachusetts 01824-4100

✒ *Celebrating Our 20th Year!* ✒

SANJIT S. KORDE
BELE A. BANERJI
SUSAN W. COBY
LAWSON WILLIAMS
RACHEL ANN MORIN

°Also licensed in NH
°°Also licensed in NH & RI
°°°Also licensed in NY

JOHN S. MCNICHOLAS
RACHELLE D. WILLARD
PATRICIA M. WRIGHT
MICHELLE L. BEAUREGARD

DUDLEY C. GOAR, OF COUNSEL
KATHRYN A. GOODFRIEND, OF COUNSEL

## DEFICIENCY NOTICE

January 13, 2010



Certified Article Number

7160 3901 9848 6568 1675

SENDER'S RECORD

Jennifer L. Morris
Unit 2, 570 Essex Avenue Condominium
570 Essex Avenue
Gloucester, MA 01930

Please reference our File #: 09-05311/Morris

RE:   Property: Unit 2, 570 Essex Avenue Condominium, 570 Essex Avenue, Gloucester, MA 01930
Mortgage Held By: Bank of America, N.A.
Mortgage Given To: Bank of America, N.A.
Date of Mortgage: January 10, 2007
Original Principal Amount of Mortgage: $360,000.00
Mortgage recorded at Essex County (Southern District) Registry of Deeds in Book 26479, Page
375

Dear Sir/Madam:

You are hereby notified in accordance with the statutes of the Commonwealth of Massachusetts of our
intention on February 3, 2010 at 2:00PM to foreclose by sale under power of sale for breach of
conditions, and by entry, the above captioned mortgage given to secure a note for the above stated
original principal amount for the whole or part of which you may be liable to the above named holder of
the mortgage in the event of a deficiency in the proceeds of the foreclosure sale.

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.

If you (1) did not execute the Promissory Note relating to this mortgage; (2) are in bankruptcy; or (3) have
been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an
attempt to collect a debt or an act to collect, assess or recover all or any portion of the debt from you
personally.

Sincerely,

Lawson Williams
LW/am



EXHIBIT
F

LEGAL NOTICE
MORTGAGEE'S SALE OF REAL ESTATE

By virtue of and in execution of the Power of Sale contained in a certain mortgage given by **Russell M. Morris and Jennifer L. Morris** to Bank of America, N.A., dated January 10, 2007 and recorded with the Essex County (Southern District) Registry of Deeds in Book 26479, Page 375 of which mortgage **Bank of America, N.A.,** is the present holder, for breach of conditions of said mortgage and for the purpose of foreclosing the same, the mortgaged premises located at **Unit 2, 570 Essex Avenue Condominium, 570 Essex Avenue, Gloucester, MA** will be sold at a Public Auction at **2:00 PM on February 3, 2010,** at the mortgaged premises, more particularly described below, all and singular the premises described in said mortgage, to wit:

The unit known as Unit Number 2 in the 570 Essex Avenue Condominium located at 570 Essex Avenue, Gloucester, Essex County, Massachusetts, a condominium established by Master Deed dated September 22, 2006 recorded with the Essex South District Registry of Deeds in Book 26109, Page 397. Said Unit is shown on the Floor Plans of the Building recorded as part of the Master Deed and on the copy of a portion of the Floor Plans attached to the first Unit Deed. Said Unit is conveyed with the benefit of and subject to: (a) An undivided 50% interest in the common areas and facilities (the "Common Elements") of the Condominium described in the Master Deed, attributable to the Unit; (b) All rights, easements and agreements, interests and provisions in said Master Deed and the Declaration of Trust of the 570 Essex Avenue Condominium, including the By-Laws contained therein recorded with said Deeds in Book 26109, Page 419, as any of the same may be amended from time to time pursuant to the provisions thereof; (c) The provisions of the M.G.L. Chapter 183A; and (d) Easements, restrictions and agreements of record insofar as any of the same are in force and applicable. A certain parcel of land situate on the southerly side of Essex Avenue in that part of said Gloucester, called West Gloucester, with all the buildings thereon, as shown as Lot 2 on plan of land called "Subdivision Plan of Land located in Gloucester, Mass. Prepared by American Land Survey Associates, Inc., Kirk W. Benson, PLS" dated March 15, 2004 recorded with Essex South District Registry of Deeds in Book 22668, Page 59 as more particularly described: Beginning at a point on Essex Avenue, thence S53°14'25"E sixty-five and 00/100 (65.00) feet by Essex Avenue; thence S33°08'00"W one hundred forty-two and 67/100 (142.67) feet by land now or formerly of Aiello; thence N55°52'42"W one hundred eighty-nine and 74/100 (189.74) feet by land now or formerly of Churchill; thence N26°24'00"E seventy-two and 46/100 (72.46) feet by Forest Lane; thence S53°14'24"E one hundred thirty-three and 61/100 feet by Lot 1 of said plan; thence N33°06'00"E eighty and 00/100 (80.00) feet by said Lot 1 to the point of beginning. Containing 18,212 square feet more or less.

For mortgagor's title see deed recorded with the Essex County (Southern District) Registry of Deeds in Book 24034, Page 21.

The premises will be sold subject to any and all unpaid taxes and other municipal assessments and liens, and subject to prior liens or other enforceable encumbrances of record entitled to precedence over this mortgage, and subject to and with the benefit of all easements, restrictions, reservations and conditions of record and subject to all tenancies and/or rights of parties in possession.

Terms of the Sale: Cash, cashier's or certified check in the sum of $5,000.00 as a deposit must be shown at the time and place of the sale in order to qualify us a bidder (the mortgage holder and its designee(s) are exempt from this requirement); high bidder to sign written Memorandum of Sale upon acceptance of bid; balance of purchase price payable in cash or by certified check in thirty (30) days from the date of the sale at the offices of mortgagee's attorney, Korde & Associates, P.C., 321 Billerica Road, Suite 210, Chelmsford, MA 01824-4100, or such other time as may be designated by mortgagee. The description for the premises contained in said mortgage shall control in the event of a typographical error in this publication.

Other terms to be announced at the sale.

Bank of America, N.A.
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100
(978) 256-1500

(KCM 09-053111/Morris)(01/13/10, 01/20/10, 01/27/10)(183781)

Return To:  LOAN # 6700031948
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256
Prepared By:  JOYCE COLLIER
BANK OF AMERICA, N.A.
1400 BEST PLAZA DR, STE 101
RICHMOND, VA 232270000

2007011600210 Bk:26479 Pg:375
01/16/2007 11:30:00 MTG Pg 1/19

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

LOAN # 6700031948

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  JANUARY 10, 2007   ,
together with all Riders to this document.
(B) "Borrower" is  RUSSELL M MORRIS AND JENNIFER L MORRIS

**EXHIBIT G**

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is  BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA

LOCUS:  Unit 2, 570 Essex Avenue, Gloucester, MA 01930

**MASSACHUSETTS** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3022 1/01

-6(MA) (0405)
Page 1 of 15          Initials:_____          CVMA 01/09/07 1:27 PM 6700031948
VMP Mortgage Solutions (800)521-7291



Lender's address is 1400 BEST PLAZA DR, STE 101, RICHMOND, VA 232270000

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated  JANUARY 10, 2007  .
The Note states that Borrower owes Lender TWO HUNDRED EIGHTY EIGHT THOUSAND AND
00/100                                                                          Dollars
(U.S. $       288,000.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  FEBRUARY 01, 2037      .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and
restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan
does not qualify as a "federally related mortgage loan" under RESPA.

-6(MA) (0401)                              Page 2 of 15      Initials: _____      Form 3022 1/01
CWA 01/09/07 1:27 PM 6700031948

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the          COUNTY          [Type of Recording Jurisdiction]
of          ESSEX          [Name of Recording Jurisdiction]:
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

Parcel ID Number: MAP 236 LOT 107                          which currently has the address of
570 ESSEX AVENUE #2                                                                       [Street]
GLOUCESTER                          [City] , Massachusetts 01930          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security

-6(MA) (0401)                          Page 3 of 15          Initials: _____          Form 3022 1/01
    CWA 01/09/07 1:27 PM 6700031946

designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
Robert J. Coakley, Witness to          RUSSELL M MORRIS              -Borrower
both

                                       _____ (Seal)
                                       JENNIFER L MORRIS              -Borrower

_____ (Seal)  _____ (Seal)
                    -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                    -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                    -Borrower                              -Borrower

COMMONWEALTH OF MASSACHUSETTS,         Essex                County ss:

On this  10th     day of   January, 2007          , before me, the undersigned notary
public, personally appeared       Russell M. Morris  and  Jennifer L. Morris

, proved to me
through satisfactory evidence of identification, which was/were  Driver's Licenses          ,
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to
me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:    4/30/10
(Seal)



Notary Public   Robert J. Coakley

ROBERT J. COAKLEY
Notary Public
Commonwealth of Massachusetts
My Commission Expires Apr 30, 2010

-6(MA) (0401)                    Page 15 of 15                Form 3022 1/01
                          CWA 01/09/07 1:27 PM 6700031948

Initials: _____

From: Avenger                                                    01/05/2010 11:23    #444 P.001/002

# KORDE & ASSOCIATES, P.C.

SANJIT S. KORDE
JULIE A. RANIERI***
SUSAN W. CODY**
LAWSON WILLIAMS
RACHEL ANN MORIN

*Also licensed in NH
**Also licensed in NH & RI
***Also licensed in NY

Counsellors at Law
321 Billerica Road, Suite 210
Chelmsford, Massachusetts 01824-4100

❧ *Celebrating Our 20th Year!* ❧

JOHN S. MCNICHOLAS*
RACHELLE D. WILLARD
PATRICIA M. WRIGHT
MICHELLE L. BEAUREGARD

DUDLEY C. GOAR, OF COUNSEL
KATHRYN A. GOODFRIEND, OF COUNSEL

December 18, 2009

Russell M. Morris
Unit 2, 570 Essex Avenue Condominium
570 Essex Avenue
Gloucester, MA 01930

RE: PETITION TO FORECLOSE MORTGAGE

File No.: 09-053111
Land Court Case No. 409843
Bank of America, N.A. vs. Russell M. Morris et al.
Property: Unit 2, 570 Essex Avenue Condominium, 570 Essex Avenue, Gloucester, MA 01930

Dear Sir/Madam:

This office has been retained to foreclose the mortgage on the above-referenced property.

Enclosed please find a copy of the Order of Notice issued by the Land Court in this foreclosure action. We will proceed with the foreclosure action until such time as the loan is brought current.

Please contact this office if you should have any questions regarding this matter.

Very truly yours,

Rachelle Willard
Enclosure
RW/er

FIRST CLASS MAIL &
CERTIFIED MAIL NO

Certified Article Number

7160 3901 9848 6571 8519

SENDERS RECORD

**EXHIBIT**

**H**

Telephone (978) 256-1500    Telefax (978) 256-7615
Website: www.kordeassoc.com

From: Avenger                                        01/05/2010 11:24      #444 P.002/002

(SEAL)                    COMMONWEALTH OF MASSACHUSETTS

                                LAND COURT

                      DEPARTMENT OF THE TRIAL COURT

                                                        09 MISC 409843

To:   Russell M. Morris                 Case No.   Bank of America. N.A.
      Jennifer L. Morris

and to all persons entitled to the benefit of the Servicemembers Civil Relief Act.

        Bank of America, N.A.

claiming to be the holder of        Mortgage
covering real                       property in  Gloucester, numbered Unit 2, 570 Essex
                                                 Avenue Condominium, 570 Essex Avenue

given by Russell M. Morris and Jennifer L. Morris to Bank of America, N.A., dated January 10, 2007,
recorded at Essex County (Southern District) Registry of Deeds in Book 26479, Page 375,

has filed with said court a complaint for authority to foreclose said mortgage

in the manner following: by entry and possession and exercise of power of sale.

If you are entitled to the benefits of the Servicemembers Civil Relief Act and you object to such
foreclosure you or your attorney should file a written appearance and answer in said court at Boston on
or before    JAN 1 8 2010

or you may be forever barred from claiming that such foreclosure is invalid under said act.

Witness, KARYN F. SCHEIER Chief Justice of said Court on   DEC 0 3 2009

    Attest:

------------------------------------
                                              Deborah J. Patterson
                                              Recorder
    File #: 09-053111

                                              A TRUE COPY
                                              ATTEST:
                                              Deborah J. Patterson
                                              RECORDER