UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RUSSELL M. MORRIS and
JENNIFER L. MORRIS

    Plaintiffs

v.　　　　　　　　　　　　　　　　　　　　　　　1:10-cv-11572-PBS

BAC HOME LOANS SERVICING, LP, et al.

    Defendants

**THE MORRISES' OPPOSITION TO BAC'S MOTION TO DISMISS**

**I. SUMMARY**

Although BAC breached federal loan-modification guidelines fir the HAMP program and wrongfully initiated foreclosure of the Morrises' home, BAC moves to dismiss the Morrises' complaint. BAC argues that allowing the Morrises' G.L. c. 93A claim to proceed is incompatible with HAMP's enforcement scheme. BAC reaches its conclusion without examining the language of HAMP's authorizing act, the HAMP guidelines themselves, or the law of G.L. c. 93A.

As shown below, however, the act creating HAMP is a consumer-protection act that "maximizes assistance for homeowners" and "minimizes foreclosure." HAMP guidelines actually require BAC to comply with "state and federal law" prohibiting "unfair and deceptive acts." Moreover, it is well-established that G.L. c. 93A provides redress for unfair business practices even where there is no independent remedy. Therefore, BAC's motion should be denied.

1

## II. FACTS

Russell M. Morris and Jennifer L. Morris ("the Morrises"), husband and wife, refinanced their home on January 10, 2007. The loan was in the amount of $288,000, from Bank of America, N.A., also secured by a mortgage in favor of Bank of America, N.A. (Compl. ¶ 6.) The current mortgagee is the Federal National Mortgage Association ("Fannie Mae"). (Compl. ¶ 9.) The servicer of the Morrises' mortgage is BAC Home Loans Servicing, LP ("BAC"). (Compl. ¶ 17.) As the servicer, BAC collects mortgage payments, sends billing statements, and transmits payments to Fannie Mae, acting in its place with respect to borrowers such as the Morrises. (Compl. ¶ 9.)

BAC, under its mortgage-servicing contract with Fannie Mae, has promised to follow all guidelines Fannie Mae promulgates. (Compl. ¶ 18.) Part of these guidelines is the Home Affordable Modification Program ("HAMP"), a national foreclosure-prevention program created under the Emergency Economic Stabilization Act of 2008. (Compl. ¶ 29.)

The purpose of HAMP is to modify mortgages of homeowners at risk of foreclosure by reducing their monthly payments. (Compl. ¶ 30.) As part of a multi-step process, the homeowner's mortgage payment is reduced to 31% of the gross monthly household income by decreasing the interest rate on the mortgage. (Compl. ¶¶ 33-41.)

HAMP has specific requirements that mortgage servicers, including BAC, evaluate borrowers for loan modifications within 30 days of an application. (Compl. ¶ 44.) But BAC repeatedly ignored

the Morrises' modification requests, refusing to evaluate them for a HAMP loan modification, although required to do so under its contract with Fannie Mae. (Compl. ¶¶ 46-48.) Instead, BAC scheduled the foreclosure sale of the Morrises' home. (Compl. ¶ 53.) The Morrises sent a demand letter pursuant to the Massachusetts Consumer Protection Act, G.L. c. 93A ("Chapter 93A"), which BAC ignored. (Compl. ¶¶ 51-52.) Left with no choice, the Morrises filed suit against BAC for violation of Chapter 93A.[1]

### III. STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

A court evaluating a complaint for dismissal under Fed.R.Civ.P. 12(b)(6) begins by assuming the truth of the facts alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1941, 173 L. Ed. 2d 868 (2009). The short and plain statement required should "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (internal quotations omitted). "[D]etailed factual allegations" are not required, Id. at 555, so long as there is sufficient factual matter to "state a claim to relief that is plausible on its face." Id. at 570. When plaintiffs have "nudged their claims across the line from conceivable to plausible," their complaint should not be dismissed. Id. at 547.

---

[1] The Morrises have additional claims against a second defendant, Korde & Associates, P.C., for violating the Fair Debt Collection Practices Act which are not at issue in the present motion.

# IV. LAW AND ANALYSIS:
# THE MORRISES STATE A CLAIM FOR VIOLATION OF CHAPTER 93A

The argument BAC makes — that Chapter 93A does not provide a private right of action unless there is a parallel right of action under some other law — has long-ago been discredited. Chapter 93A case law holds that "unfair and deceptive" business practices are prohibited. BAC's refusal to evaluate the Morrises for a loan modification is such a business practice. Further undermining BAC's argument is the text of the HAMP guidelines themselves, which states that mortgage servicers like BAC must comply with consumer-protection laws.

**A. HAMP Guidelines Mandate Compliance With Laws Like Chapter 93A That Prohibit "Unfair and Deceptive" Business Practices.**

The HAMP guidelines emphasize the intent that it allow for, rather than prohibit, other causes of action for violation of HAMP guidelines, including a broad range of consumer-protection acts such as Chapter 93A:

> Fannie Mae reminds each servicer (and any subservicer it uses) to be aware of, and **in full compliance with, all federal, state, and local laws** ... including, but not limited to ...
> - Section 5 of the Federal Trade Commission Act, which **prohibits unfair or deceptive acts or practices**.
> - The Equal Credit Opportunity Act and the Fair Housing Act ....
> - The Real Estate Settlement Procedures Act ....
> - The Fair Debt Collection Practices Act ....

Fannie Mae Announcement 09-05R, p. 1, May 15, 2009. (Emphasis added.) (**Exhibit A**, p. 14.)

4

These acts are the major consumer-protection statutes, showing that remedies for violation of HAMP are intended to be taken through federal and state laws.

Thus, the argument offered by BAC, that Freddie Mac is the exclusive regulatory authority (Def's Mot. to Dismiss p. 3), is contradicted by the clear language above of the HAMP guidelines. The guidelines not displace or occupy the field of regulation of mortgage servicers with respect to the HAMP program. Rather, the HAMP program leaves the field wide open, recognizing and enshrining borrowers' rights to pursue violations of HAMP through the courts.

Unfair or deceptive business practices constitute a violation of federal law under the Federal Trade Commission Act and the state law of Chapter 93A, which provides a private right of action for consumers. The Morrises specifically allege that BAC's acts were unfair and deceptive because the result was to deprive them of the opportunity to modify their mortgage and avoid foreclosure. (Compl. ¶ 21.) BAC's motion to dismiss fails.

**B. Chapter 93A Provides Legal Redress for Unfair Business Practices Without an Independent Cause of Action.**

Although HAMP does not provide a private right of action, its guidelines, as reproduced above, emphasize that other consumer-protection statutes should provide homeowners with avenues for addressing violations of the program.

Violations of federal consumer-protection statutes constitute per se violations of Chapter 93A. The regulations promulgated by the Attorney General state that an act violates Chapter 93A if it

violates "[F]ederal consumer protection statutes ...." 940 Code Mass. Regs. § 3.16. This principle has repeatedly been upheld in federal courts. French v. Corporate Receivables, Inc., 489 F.3d 402, 404 (1st Cir. 2007) (violation of the Fair Debt Collection Practices Act actionable under Chapter 93A); In re TJX Cos. Retail Sec. Breach Litig., 524 F. Supp. 2d 83, 93-94 (D. Mass. 2007) (violation of Federal Trade Commission Act).

And courts have routinely found violations of Chapter 93A due to violation of other statutes that in-and-of-themselves provide no independent cause of action. Dodd v. Commercial Union Ins. Co., 365 N.E.2d 802 (Mass. 1977) (insurance claim denial under G.L. c. 175D, § 2); Hershenow v. Enter. Rent-A-Car Co. Of Boston, Inc., 840 N.E.2d 526, 528 (Mass. 2006) (rental car collision-damage-waiver statute, G.L. c. 90, § 32E ½).

Here, the HAMP program was created under consumer-protection statutes, the Emergency Economic Stabilization Act of 2008 ("EESA"), as amended by the American Recovery and Reinvestment Act of 2009 ("ARRA"). The EESA states that one of its purposes is to "preserve[] homeownership ...." EESA § 2. The ARRA is intended to "To assist those most impacted by the recession." ARRA § 3(a)(2). Most importantly, the EESA creates HAMP "[t]o maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages ... to minimize foreclosures." EESA § 109.

EESA and ARRA then, are intended to protect consumers by preventing foreclosure and modifying their mortgages. The Morrises'

mortgage is one of these mortgages that must be evaluated. Violation of HAMP guidelines is unfair and deceptive because it deprives the Morrises of the opportunity to save their home from foreclosure.

### C. The HAMP Cases Cited by BAC are Misleading Because They Do Not Address Violations of Chapter 93A.

The cases BAC relies on are inapposite. They do not discuss Massachusetts law at all. They do not stand for the proposition that a plaintiff may not assert a state-law claim related to unfair or deceptive conduct occurring under the guise of HAMP, and admit as much. (Def's Mot. to Dismiss, p. 6, admitting "[n]o court has yet considered the specific question of whether a HAMP violation is an 'unfair or deceptive act or practice' ...."). Rather, BAC misdirects from the central issue: whether its refusal to comply with its obligation to the Morrises was unfair and deceptive.

One case BAC cites actually supports the Morrises' claim that they should be entitled to file suit against BAC for its HAMP violations despite there being no enforcement mechanism contained in HAMP. J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc., 365 F. Supp. 2d 119, 142 (D. Mass. 2005) ("violation of a specific statute that does not itself permit private recovery may give rise to a private claim under c. 93A if the violation amounts to an unfair method of competition or an unfair or deceptive practice independently prohibited by G.L. c. 93A, § 2, and if recovery under c. 93A is compatible with the objectives and enforcement mechanisms the underlying statute contains.").

7

Since HAMP guidelines reproduced above contemplate private rights of action against mortgage servicers such as BAC for unfair and deceptive practices related to HAMP, allowing the Morrises' suit to proceed would be compatible with its objectives.

Other cases BAC cites do not actually stand for the proposition that a plaintiff may not assert a state law claim related to unfair or deceptive conduct occurring under HAMP. See Aleem v. Bank Of Am., No. EDCV 09-01812-VAP (RZx), 2010 WL 532330 (C.D. Cal. Feb. 9, 2010) (although those plaintiffs mentioned HAMP, they failed to allege any elements related to violations of it nor did they provide a basis for concluding that a private right of action existed under the statute); Zendejas v. GMAC Wholesale Mortg. Corp., No. 1:10-CV-00184 OWW GSA, 2010 WL 2490975, Slip Copy (E.D. Cal. June 16, 2010) (which provides no explanation for why, under California law, it was unfair to fail to provide a loan modification). Another list of cases provided by BAC refers are California district court cases that address the issue of third-party beneficiaries — a cause of action that the Morrises did not plead.

Instead, the Morrises' claim has to do with initiating unauthorized foreclosure and refusing to evaluate for a loan modification (Compl. ¶ 27). The phrase "unfair or deceptive" is broad and flexible, and it is intentionally so. Commonwealth v. DeCotis, 366 Mass. 234, 242 (1974). The Morrises' claims spring independently from their rights under the laws of the Commonwealth of Massachusetts.

## V. CONCLUSION

For the above reasons, the Morrises have pleaded a violation of Chapter 93A. HAMP guidelines explicitly provide for a private cause of action under laws like Chapter 93A in the event of a violation.

Respectfully submitted,

Plaintiffs,
Russell and Jennifer Morris,
By their attorney,

/s/Josef Culik
Josef Culik (BBO #672665)
Culik Law P.C.
100 Cummings Center
Suite 425G
Beverly, MA 01915
978-910-0248
978-910-0247 Fax
josef@culiklaw.com

Dated: November 1, 2010

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/Josef Culik
Josef Culik

Dated: November 1, 2010