UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RUSSEL M. MORRIS and<br>JENNIFER L. MORRIS,<br><br>        Plaintiffs,<br><br>        v.<br><br>BAC HOME LOANS SERVICING, L.P.,<br>d/b/a BANK OF AMERICA HOME LOANS,<br>and KORDE & ASSOCIATES, P.C.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:10-11572-PBS |

**MEMORANDUM AND ORDER**

April 4, 2011

Saris, U.S.D.J.

## I. INTRODUCTION

Defendant BAC Home Loans Servicing, L.P. ("BAC") has moved to dismiss Plaintiffs Russell and Jennifer Morris' complaint, which alleges that BAC violated Mass. Gen. L. c. 93A, the Consumer Protection Act, by failing to comply with federal regulations relating to the Home Affordable Modification Program ("HAMP"). BAC argues that because HAMP does not provide for a private cause of action, the Plaintiffs have not stated a claim for relief. This Court disagrees. HAMP violations can give rise to a viable 93A claim if the activity would be independently

1

actionable under Chapter 93A as unfair and deceptive.  In this case, the plaintiffs have not alleged a sufficient factual basis to support Chapter 93A liability in the complaint.  They have represented orally, however that additional facts exist that would give rise to a viable Chapter 93A claim.  As such, BAC's motion is **DENIED**, but Plaintiffs must amend their complaint within 30 days to include this additional information.

## II.  FACTUAL BACKGROUND

The following alleged facts, culled from the relevant portions of Plaintiffs' complaint, are taken to be true for purposes of this motion to dismiss.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1943 (2009).  Russell M. Morris and Jennifer L. Morris are husband and wife.  BAC Home Loan Servicing LP ("BAC"), a limited partnership doing business as Bank of America Home Loans and a subsidiary of Bank of America, N.A., is in the business of servicing and originating mortgage loans in several states, including Massachusetts.  Compl. ¶ 1.  Korde & Associates is a debt collector and law firm that conducts foreclosures.  Id.

On January 10, 2007, the Plaintiffs refinanced their home in Gloucester, Massachusetts, securing a loan from Bank of America, N.A. in the amount of $288,000.  Compl., Exhibit G.  Bank of America sold the mortgage to Fannie Mae, which then employed BAC

to act as the servicer of the loan.[1]  As servicer, BAC is the intermediary between Fannie Mae and the Plaintiffs.

By August 2009, the Plaintiffs were in default on their mortgage loan.  On or around August 24, 2009, Bank of America, N.A. filed a complaint in the Massachusetts Land Court, seeking authority to foreclose on the Plaintiffs' property.  Compl., Exhibit H.  In a letter to Russell Morris, dated December 18, 2009, regarding "Petition to Foreclose Mortgage," Korde & Associates informed Mr. Morris that it would "proceed with foreclosure action until such time as the loan is brought current."  Id.  In a Deficiency Notice from Korde & Associates to Jennifer Morris dated January 13, 2010, Korde & Associates informed Ms. Morris of its "intention on February 3, 2010 at 2:00 PM to foreclose by sale under power of sale for breach of conditions and by entry, [the mortgage located at 570 Essex Avenue, Gloucester, MA]."  Compl., Exhibit F.

On January 26, 2010 and again on February 4, 2010, the Plaintiffs sent "a complete financial package to BAC" in application for the Home Affordable Modification Program ("HAMP").  Compl. ¶ 46.  The package was sent via e-mail to the Home Retention Customer Relations Department at BAC.  Id.  On

---

[1] Servicers are responsible for collecting payments, sending billing statements, and acting in the place of the mortgage owner (here Fannie Mae) in interactions with the buyer.  This includes modifying loans and conducting foreclosures as required.  Pl.'s Br., Exhibit A at 14.

3

April 13, 2010, BAC sent the Plaintiffs a "non-HAMP modification agreement that did not comply with the HAMP guidelines." Id. ¶ 49. The same day, counsel for the Plaintiffs sent BAC a "demand for an offer of settlement pursuant to Massachusetts Consumer Protection Act." Id. ¶ 50; Exhibit D. In the letter, Plaintiffs' counsel asserted that BAC had failed to timely evaluate the Plaintiffs for a loan modification as required by HAMP guidelines. Specifically, the letter alleged that BAC had violated HAMP Supplemental Directive 09-07, which requires written acknowledgment of receipt of applications for loan modifications within 10 days and a substantive response within 30 days. Id. BAC did not respond to the Plaintiffs' demand letter. Id. ¶ 51.

The Plaintiffs are seeking "declaratory judgment that the BAC violated Chapter 93A by failing to evaluate the Plaintiffs for a loan modification under the [HAMP];" an "award of actual damages, costs, and attorney's fees;" and an "order that BAC immediately evaluate the Plaintiffs for HAMP." Id. at 9.[2]

**III. DISCUSSION**

---

[2] The plaintiffs have also brought a claim for breach of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692K, against co-defendant Korde & Associates. The Court raised the question of whether BAC properly removed the action, as only the non-removing co-defendant had a federal cause of action asserted against it. BAC responded that the co-defendant had consented to the removal. Plaintiff and co-defendant have not objected, and the Court could find no caselaw directly on point. In these circumstances, the Court will retain jurisdiction.

The plaintiffs' burden is to plead "sufficient matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A case has 'facial plausibility' when plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). Additionally, for the purposes of a motion to dismiss, exhibits attached to a complaint "are part of the allegations of the complaint." Blackstone Realty LLC v. FDIC, 244 F.3d 193, 195 n. 1 (1st Cir. 2001) (citing Fed. R. Civ. P. 10(c)). In considering the adequacy of pleadings, a court must take as true the factual allegations in the plaintiff's pleadings and must make all reasonable inferences in favor of the plaintiff. Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).

BAC has moved to dismiss on the sole ground that HAMP does not provide for a private right of action, and therefore a violation of HAMP guidelines cannot give rise to a valid claim under Chapter 93A. In support of its argument, BAC points to two cases from the Eastern District of California, in which the court

5

dismissed claims alleging violations of HAMP and seeking relief under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. See Aleem v. Bank of America, No. 09-01812, 2010 WL 532330 (E.D. Cal. Feb. 9, 2010); Zendejas v. GMAC Wholesale Mortg. Corp., No. 10-00184, 2010 WL 2490975 (E.D. Cal. June 16, 2010). Both, however, are distinguishable. In Zendejas, the court dismissed because the plaintiffs pled only that the defendant servicer had not provided them with a loan modification; plaintiffs "failed to state facts to show how any of the purported conduct was unlawful, unfair, or fraudulent." Zendejas, 2010 WL 2490975, at *6. Accordingly, there the issue was sufficiency of the pleadings, namely that the plaintiffs had not alleged anything other than that they had been denied a HAMP modification, which is not a statutory violation. In Aleem, the court dismissed on the basis that the "UCL cannot create a private right of action where none exists under the federal statute." Aleem, 2010 WL 532330, at *3. Here, the issue is whether the absence of a private right of action under HAMP necessarily precludes recovery for BAC's actions under Chapter 93A, which is a different statutory scheme.

**A. HAMP and Chapter 93A**

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A § 2. Individuals have a private right of action under the statute.

6

Id. at § 9. To prevail on a Chapter 93A claim, the plaintiff "must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result." Brandon Assocs., LLC v. FailSafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005) (citing Bowers v. Baystate Tech., Inc., 101 F. Supp. 2d 53, 54-55 (D. Mass. 2000)).

Violation of a statutory regime is not a necessary basis for a Chapter 93A claim, as Chapter 93A "creates new substantive rights and, in particular cases, makes conduct unlawful which was not unlawful under the common law or any prior statute." Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 897 N.E.2d 548, 556 (2008) (internal quotation marks and citation omitted). Conversely, violation of a statute does not automatically give rise to a Chapter 93A claim. See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 66 (1st Cir. 2009)("To prove such a claim, it is neither necessary nor sufficient that a particular act or practice violate common or statutory law.")(citing Kattar v. Demoulas, 433 Mass. 1, 739 N.E.2d 246, 257 (2000)); see also Ording v. BAC Home Loans Servicing, LP, No. 10-10670, 2011 WL 99016, at *6 (D. Mass. Jan. 10, 2011) (Bowler, M.J.).

As such, a violation of HAMP that is deceptive or unfair could create a viable claim for relief under Chapter 93A. See

7

Bosque v. Wells Fargo Bank, N.A., No. 10-10311, 2011 WL 304725, at *7-*8 (D. Mass. Jan. 26, 2011) (denying motion to dismiss Chapter 93A claim arising out of HAMP application); cf. Speleos v. BAC Home Loans Servicing, L.P., No. 10-11503, 2010 WL 5174510, at *6 (D. Mass. Dec. 14, 2010) (stating, with regard to HAMP, that "a claim for negligence based on a statutory or regulatory violation can survive even where there is no private cause of action under that statute or regulation."). "Where a statute does not provide a private means of recovery, for a cause of action pursuant to chapter 93A to proceed, the violation must be determined to be unfair or deceptive in and of itself[.]" Ording, 2011 WL 99016, at *6.

The plaintiff must also show "that 'recovery under [chapter] 93A is compatible with the objectives and enforcement mechanisms of the underlying statute.'" Id. (quoting Whitehall Co. Ltd. v. Merrimack Valley Distrib. Co., 56 Mass App. Ct. 853, 780 N.E.2d 479, 483 (2002)); see also J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc., 365 F. Supp. 2d 119, 142 (D. Mass. 2005).

Specifically addressing a HAMP claim, the Ording Court described the relevant inquiry as:

> (1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under chapter 93A even absent the violation of a statutory provision (i.e. are the violations unfair or deceptive); and (3) if the conduct is actionable, is

8

recovery pursuant to chapter 93A compatible with the "objectives and enforcement mechanisms" of HAMP?

Ording, 2011 WL 99016, at *7. In Ording, the plaintiffs' complaint failed the first requirement; because they had not alleged in the complaint that their mortgages were owned by Fannie Mae, they had not shown that HAMP even applied, let alone that it had been violated. Id. at *8. Here, plaintiffs plead that their mortgage is owned by Fannie Mae and that they applied for a loan modification. The plaintiffs also plead that HAMP has been violated. See Compl. ¶ 47 ("BOA failed to evaluate the Morrises under HAMP as it is required to do.").

The Court must therefore determine whether BAC's actions would be independently actionable under 93A, that is, whether those actions were unfair or deceptive. The plaintiffs assert that BAC did not respond to their request for HAMP relief in a timely fashion, and that BAC furthermore "failed to evaluate" and "ignored" that request. Compl. ¶¶ 47-48. The complaint also alleges that BAC sent the plaintiffs "a non-HAMP modification agreement," rather than the Trial Period Plan Notice or other documentation normally issued in anticipation of a HAMP modification. Id. ¶ 49; see U.S. Dep't of Treasury, Announcement 09-31 ("Announcement 09-31") at 6-7, November 2, 2009 (describing servicer's obligations upon receipt of borrower's financial information). The plaintiffs alleged that they "suffered damages including damage to their credit, loss of time, accumulation of

9

interest, and unnecessary initiation of foreclosure action by [BAC]." Compl. ¶ 53.

Under HAMP guidelines, which were attached to the Complaint, servicers have an obligation to respond to borrower requests within 10 days with "a written notice with information describing HAMP" and a description of any additional documentation that borrower must provide. Announcement 09-31 at 6. Within 30 days of receiving a complete borrower application, the servicer must "complete its evaluation of borrower eligibility and notify the borrower of its determination. . . . If the servicer determines that a borrower cannot be approved for a trial period plan, the servicer must communicate that determination to the borrower in writing and consider the borrower for another foreclosure prevention alternative."[3] Id. at 7.

---

[3] The eligibility requirements for a HAMP modification are described in U.S. Dep't of Treasury, Announcement 09-05R, May 15, 2009. The description of the eligibility determination process is not altogether clear. Once a borrower has satisfied certain basic eligibility criteria, her loan is subject to a Net Present Value ("NPV") Test. The NPV test uses a number of inputs to determine whether a loan modification would create greater financial value than a foreclosure sale. The borrower's financial situation is then evaluated using a multi-step, sequential "waterfall" analysis, which the HAMP program utilizes to reduce borrowers' monthly loan payments to, but not below, 31% of their pre-tax monthly income. Id. at 10-11. Simply understood, the waterfall steps are (1) capitalize accrued interest, (2) reduce the interest rate, (3) extend the payment term, and (4) forgive the principal balance. Eligibility for a HAMP modification turns on the results of the NPV test and the ability of the waterfall to bring a borrower's monthly payment into the proper range. Id. at 6-7.

10

Under the above requirements, plaintiffs allege that BAC had an obligation to provide them with confirmation of receipt of their application within 10 days, and to complete their eligibility evaluation within 30 days. At the end of those 30 days, BAC was required to either send the plaintiffs a Trial Period Plan notice, or inform them in writing of their ineligibility and consider them for "another foreclosure prevention alternative." Plaintiffs allege that BAC fulfilled none of the above obligations. When all reasonable inferences are drawn in plaintiff's favor, BAC did not timely or properly evaluate the plaintiffs for HAMP. If such failure is fairly and sufficiently pled as deceptive or unfair, it can provide the basis for relief under Chapter 93A.

Before reaching the sufficiency of the pleading, however, the Court must first determine that recovery under 93A for violations of HAMP is "compatible with the objectives and enforcement mechanisms of HAMP." Ording, 2011 WL 99016, at *7. Fannie Mae has described HAMP as "a national modification program aimed at helping 3 to 4 million at-risk homeowners- both those who are in default and those who are at imminent risk of default- by reducing monthly payments to sustainable levels." U.S. Dep't of Treasury, Announcement 09-05R at 1, May 15, 2009. See also Speleos, 2010 WL 5174510, at *4 (stating that "the purpose of HAMP is to help homeowners avoid foreclosure by obtaining loan

modification"); Bosque v. Wells Fargo Bank, N.A., No. 10-10311, 2011 WL 304725, at *2 (D. Mass. Jan. 26, 2011) ("The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt."). Allowing homeowners threatened with foreclosure to recover damages under Chapter 93A is compatible with this objective. Indeed, the Servicer Participation Agreement between servicers and the government provides that participating servicers must covenant to act consistent with state consumer protection laws. See Commitment to Purchase Financial Instrument and Servicer Participation Agreement, Ex. B, at 3, available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/servicerparticipationagreement.pdf (obliging the servicer to covenant that "all Services will be performed in compliance with, all applicable Federal, state and local laws, regulations, regulatory guidance, statutes, ordinances, codes and requirements, including, but not limited to, . . . Federal and state laws designed to prevent unfair, discriminatory or predatory lending practices and all applicable laws governing tenant rights.").

With regard to enforcement mechanisms, the HAMP guidelines name Freddie Mac as the "compliance agent for HAMP." U.S. Dep't of Treasury, Supplemental Directive 09-08 ("Supp. Dir. 09-08"),

at 4 (Nov. 3, 2009); <u>see also</u> U.S. Dep't of Treasury, Supplemental Directive 09-01 ("Supp. Dir. 09-01"), at 25 (April 6, 2009) ("In its role as compliance agent, Freddie Mac will utilize Freddie Mac employees and contractors to conduct independent compliance assessments."). The guidelines describe Freddie Mac's role as follows:

> The scope of the assessments will include, among other things, an evaluation of documented evidence to confirm adherence (e.g., accuracy and timeliness) to HAMP requirements with respect to the following:
>
> - Evaluation of Borrower and Property Eligibility
> - Compliance with Underwriting Guidelines
> - Execution of NPV/Waterfall processes
> - Completion of Borrower Incentive Payments
> - Investor Subsidy Calculations
> - Data Integrity
>
> The review will also evaluate the effectiveness of the servicer's quality assurance program; such evaluation will include, without limitation, the timing and size of the sample selection, the scope of the quality assurance reviews, and the reporting and remediation process.

Supp. Dir. 09-01 at 25. Compliance reviews also encompass "the content and distribution of Borrower Notices sent to borrowers, and the responsiveness of the servicer's customer service hotline for borrowers seeking additional detail about the information contained in the Borrower Notice." Supp. Dir. 09-08 at 4. Freddie Mac's compliance assessments take the form of published reports. Supp. Dir. 09-01 at 26.

BAC argues that Freddie Mac's role as compliance agent supports the conclusion that HAMP does not provide a private

13

right of action.  See, e.g., Marks v. Bank of America, N.A., No. 03:10-08039, 2010 WL 2572988, at *4, *7 (D. Ariz. June 22, 2010) ("[Allowing] individual claims would undermine Freddie Mac's role as the compliance officer for the HAMP;" "the enforcement of the modification program is contemplated only from the top down."). The implication is that allowing recovery under Chapter 93A for violations of the HAMP guidelines is not compatible with the Treasury Department's designated enforcement scheme.

As compliance agent, Freddie Mac is specifically tasked with evaluating servicers' customer service and notification practices, both of which are of central importance to the Morris' claims.  Aside from compliance assessments, however, Freddie Mac possesses limited enforcement powers under the contractual agreements between servicers and the government.  See Jean Braucher, Humpty Dumpty and the Foreclosure Crisis: Lessons From the Lackluster First Year of the Home Affordable Modification Program, 52 Ariz. L. Rev. 727, 770 (2010) ("The standard contract gave the government certain enforcement rights upon contract default, including withholding payments under the program and requiring the participating servicer to 'submit to additional Program administrator oversight[.]'").

BAC argues that because HAMP is a voluntary program, Treasury made a purposeful decision to minimize enforcement powers in an effort to persuade servicers to participate.  One

14

could read Freddie Mac's limited enforcement power as an indication that HAMP participation was not intended to expose servicers to liability for damages. However, the Treasury Department also knew that servicers were bound by state consumer protection laws, and the liability created thereunder. Regardless, given the limited nature of Freddie Mac's actual enforcement power, there is nothing about recovery under Chapter 93A that actively conflicts with the enforcement scheme in the HAMP guidelines.

### B. Sufficiency of the Pleading

Having determined that violations of HAMP can provide the basis for recovery under Chapter 93A, the inquiry turns now to the sufficiency of the pleading. As discussed above, the plaintiffs have pled sufficient facts to show that BAC violated HAMP. However, the plaintiffs must plead more than that the HAMP guidelines were violated; they must plausibly allege that BAC's actions were unfair or deceptive. Ording, 2011 WL 99016, at *7; J.E. Pierce, 365 F. Supp. 2d at 142. Although Chapter 93A does not specifically define "unfair" or "deceptive," the Massachusetts courts have applied a three-step analysis to determine whether conduct is unfair under the Act. They consider "(1) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or

unscrupulous; and (3) whether it causes substantial injury to consumers." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (citing PMP Assocs., Inc. v. Globe Newspaper Co., Inc., 336 Mass. 593, 321 N.E.2d 915, 917 (1975)); see also Jasty v. Wright Medical Tech., Inc., 528 F.3d 28, 38 (1st Cir. 2008) ("[A] plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether an act or practice is unfair." (quoting Swanson v. Bankers Life Co., 389 Mass. 345, 450 N.E.2d 577, 580 (1983))).

Applying these factors to the HAMP context, the regulatory requirements of HAMP form the statutory "penumbra", a dereliction of duty under the HAMP contract is colorably unethical or unscrupulous (especially in light of the applicant's reasonable expectations), and there is potential substantial injury to an applicant facing foreclosure and/or substantial arrearages. See Globe Newspaper, 321 N.E.2d at 917; see also Swanson, 450 N.E.2d at 580 ("What a defendant knew or should have known may be relevant in determining unfairness."); Hessleton v. BankNorth, N.A., 18 Mass. L. Rptr. 7, 2004 WL 1588255, at *4 (Mass. Super. 2004) (describing "the parties' understandings and reasonable expectations" as an important element in determining Chapter 93A liability).

That said, not every technical violation of HAMP should

16

expose a servicer to Chapter 93A liability.  The complaint must demonstrate unfairness to the degree of factual detail required by Iqbal and Twombly.  In other words, a complaint cannot merely "[tender] naked assertions devoid of further factual enhancement."  Iqbal, 129 S.Ct. at 1949.  In this case, plaintiffs have alleged that BAC ignored or failed to evaluate their HAMP application.  As factual support for this allegation, they allege only that BAC did not timely provide the appropriate notifications and that BAC sent a non-HAMP modification agreement.  Without further factual detail demonstrating unfairness, as opposed to minor delay or trivial clerical flaws, this pleading does not state a claim rising to the level of a Chapter 93A violation.

Although one cannot reasonably infer from the facts as pled that BAC wholly ignored the plaintiffs' application, plaintiff did make certain oral representations in court, regarding BAC's actions in this case, that lend support to 93A liability.  Specifically, he represented that BAC had a history of being non-responsive to the plaintiffs' efforts to obtain a loan modification, and that a prior such effort had yielded higher monthly payments, an error that BAC made little or no effort to fix.  As such, this Court will not dismiss the complaint, but rather orders plaintiffs to amend their complaint within 30 days to include further factual support for the allegation that BAC

unfairly disregarded and mishandled plaintiffs' HAMP application.

**ORDER**

BAC's motion to dismiss (Docket No. 7) is **DENIED**; however, plaintiffs are ordered to amend their complaint within 30 days in keeping with this opinion. If the plaintiffs do not file an amended complaint within 30 days, the case will be dismissed. Further, the case is hereby referred to a United States Magistrate Judge for settlement discussions.

/s/ Patti B. Saris
PATTI B. SARIS
United States District Judge